■ In the Matter of STRATHMORE HILLS CIVIC ASSOCIATION et al., Respondents-Appellants, v TOWN OF HUNTINGTON et al., Appellants-Respondents. (Matter No. 1.) GERALD H. GRAYSON, Respondent-Appellant, v TOWN OF HUNTINGTON et al., Appellants-Respondents. (Matter No. 2.)—In a proceeding pursuant to CPLR article 78 to annul a rezoning resolution of the Town Board of the Town of Huntington which granted the application of the Huntington Housing Authority to rezone approximately five acres of property owned by the Town of Huntington from one-acre residential to multifamily (matter No. 1), and an action for a judgment declaring the property affected by the rezoning resolution to be parkland (matter No. 2), (1) the Town of Huntington and the members of the Town Board of the Town of Huntington appeal, and the Huntington Housing Authority and the Chairman and the Executive Director of the Huntington Housing Authority separately appeal, from so much of a judgment of the Supreme Court, Suffolk County (Gowan, J.), dated September 27, 1988, as annulled the resolution on the ground that the final environmental impact statement upon which the resolution was based did not consider the effect of the rezoning on the population patterns and community character of the surrounding area, and failed to render a determination on their respective motions for summary judgment dismissing the complaint, and (2) the Strathmore Hills Civic Association and Gerald Grayson cross-appeal from so much of the same judgment as failed to annul the rezoning resolution because the final environmental impact statement failed to properly consider the impact of the rezoning on certain aspects of the physical environment and (3) Gerald Grayson cross appeals from so much of the judgment as failed to render a determination on his cross motion for leave to amend the complaint.

Ordered that the appeal by the Town of Huntington and the individual members of the Town Board of the Town of Huntington and the separate appeal by the Huntington Housing Authority and the Chairman and the Executive Director of the Huntington Housing Authority from so much of the judgment as failed to render a determination on their motions

for summary judgment are dismissed, as the motions remain pending and undecided *(see, Katz v Katz,* 68 AD2d 536); and it is further,

Ordered that the cross appeal by the Strathmore Hills Civic Association and Gerald Grayson is dismissed, without costs or disbursements *(see, Parochial Bus Sys. v Board of Educ.,* 60 NY2d 539); and it is further,

Ordered that the judgment is reversed, the rezoning resolution of the Town of Huntington is confirmed, and the proceeding is dismissed on the merits without costs or disbursements, and the declaratory judgment action is remitted to the Supreme Court, Suffolk County, for determination of the motions for summary judgment made in that action.

These appeals arise in a related action and proceeding which were brought in an attempt to stop the construction of a low-income housing project on land owned by the Town of Huntington (hereinafter the town). In May 1985, the Huntington Housing Authority (hereinafter the HHA) made an "Application For Change of Zone" in order to construct 50 units of low-income housing on vacant property owned by the town. Although the application was originally for 75 units, a decrease in the grant to HHA received from HUD forced the HHA to decrease the number of proposed units to 50. The application sought to change the zoning from R-40 (one-acre residential) to R-3M (multifamily).

The town issued a positive declaration pursuant to the New York State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA) and contracted with Planistics Inc. to prepare a draft environmental impact statement (hereinafter DEIS). The DEIS was completed in June 1987. In October 1987 the town voted to accept the DEIS and hold a public hearing pursuant to ECL 8-0109 and the Town Code to secure comments on both the DEIS and the rezoning application. The hearing was held on November 24, 1987 and on December 4, 1987, Planistics filed with the town the final environmental impact statement (hereinafter FEIS) which incorporated the DEIS and was designed to "clarify issues raised at the DEIS public hearing".

The town passed a resolution formally accepting the FEIS as complete and on December 22, 1987, the town adopted a resolution approving the rezoning of the subject property. The resolution also made the necessary findings required by 6 NYCRR 617.9 addressing the environmental impact of the proposed project.

In May 1987 the plaintiff Gerald Grayson commenced an action seeking a judgment declaring that the site of the proposed project was "parkland" and therefore it could not be used for any other purpose absent express approval of the Legislature. After the rezoning resolution was adopted the petitioners commenced a proceeding pursuant to CPLR article 78 seeking to annul the rezoning resolution on the ground, *inter alia,* that the FEIS had failed to adequately address the environmental impact of the proposed project. Meanwhile, HHA moved for summary judgment dismissing the complaint in the declaratory judgment action and Grayson cross-moved for leave to amend his complaint. The oral argument upon the motions was heard simultaneously before the Supreme Court together with the arguments in the proceeding on March 9, 1988.

In a decision dated July 1, 1988, the Supreme Court found that the FEIS adequately addressed the project's impact on the physical environment and allowed the town to take a "hard look" at the effects of the projects. However, the Supreme Court annulled the rezoning resolution because it determined that the town had not taken the required "hard look" at the projects possible effect on existing population patterns and community character, stating in its decision:

"While courts acknowledge that in some cases, the lead agency's 'hard look' at a number of environmental factors may be sufficient from a cumulative standpoint, the FEIS (and DEIS) fail to look at the population patterns and neighborhood character which will be impacted by the governmental action. The impact of a project on the population patterns or existing community character, even without a separate impact on the physical environment, is a relevant area of environmental concern * * *. Such area includes the long-term secondary displacement of residents and businesses and its effect on population patterns, community goals and neighborhood character *(Midtown South Preservation & Development Comm. v. City of New York,* 130 AD2d 385). *Herein, in light of the possible further development of the area * * * it is clear that the demographic effects must be reviewed by the governmental entity involved in action affecting the environment * * *.*

*"Although the DEIS notes that the adjacent property will have development potential and any proposal will be subject to scrutiny by the* TOWN, *it fails to relate such potential expansion with the population patterns and neighborhood character in light of the present project. (Cf., Midtown South Preservation and Development Comm. v. City of New York, supra).*

"Consequently, the town could not have taken the required 'hard look' at the environmental concerns of the long-term demographic effects on the population pattern and community character in their determination to approve the application for a change of zoning classification" (emphasis added).

It is obvious from its decision that the Supreme Court placed great emphasis on the possibility that landowners whose property abutted the subject parcel might seek to rezone their properties in light of the town's action. The FEIS recognized this as a distinct possibility but noted that any future applications would have to stand on their "own merits". We cannot agree with the Supreme Court that the mere possibility of future rezoning applications is sufficient to obligate the town to consider the cumulative effect of these potential changes in light of the instant project (cf., Matter of Save the Pine Bush v City of Albany, 70 NY2d 193). Notably, in Matter of Save the Pine Bush, (supra, at 206), where the Court of Appeals held that the municipality did have to consider such cumulative impacts, there were 10 pending rezoning applications which were part of "a larger plan designed to resolve conflicting specific environmental concerns in a subsection of a municipality with special environmental significance". In the instant case, none of these factors exists. The instant project is at present the only one for which a change of zone has been requested and the town has no specific plan to rezone the entire area. Our review of the FEIS reveals that the town has adequately considered the impact of the instant project on the population patterns and community character of the surrounding area as required by the ECL (see, ECL 8-0105 [6]).

We agree with the Supreme Court that there is no merit to the petitioners' claims that the FEIS failed to adequately address the impact of the project on the physical environment. Our review of the FEIS leads us to the conclusion that it fully satisfies the substantive requirements of SEQRA (see, Aldrich v Pattison, 107 AD2d 258, 265-266).

"Nothing in the law requires an agency to reach a particular result on any issue, or permits the courts to second-guess the agency's choice, which can be annulled only if arbitrary, capricious or unsupported by substantial evidence (Aldrich v Pattison, 107 AD2d 258, 267, supra; see also, Vermont Yankee Nuclear Power Corp. v Natural Resources Defense Council, 435 US 519, 555)" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417).

The declaratory judgment action must be remitted to the

Supreme Court for a decision on the motions presented by the parties. If, as the plaintiff alleges, the property in question had been dedicated as parkland, then it may not be used for the proposed project without the specific approval of the Legislature *(see, Matter of Ackerman v Steisel,* 104 AD2d 940, 941; *Pearlman v Anderson,* 62 Misc 2d 24, *affd* 35 AD2d 544). In light of our decision that the rezoning resolution properly considered the project's impact on the environment, a decision on the declaratory judgment action is mandatory in order for the town and HHA to proceed.

We have reviewed the remaining issues raised by the petitioners and find them to be without merit. Lawrence, J. P., Eiber, Harwood and Balletta, JJ., concur.