■ JAMES A. BAKER, SR., Appellant, v CITY OF ELMIRA, Respondent. [707 NYS2d 513] —Peters, J. Appeal from an order of the Supreme Court (Ellison, J.), entered October 19, 1998 in Chemung County, which granted defendant's motion for summary judgment dismissing the complaint.

In March 1991, plaintiff, employed by defendant City of Elmira as a firefighter since 1974, took the civil service promotional examination for Fire Lieutenant and placed fifth on the eligible list which expired in June 1993. Before its expiration, the first four firefighters were promoted in the order of their civil service scores. By memorandum dated March 18, 1993, Donald Harrison, defendant's Fire Chief, informed W. Gregg LaMar, defendant's City Manager, of the retirement of the Deputy Chief and other job vacancies. Since one of those vacancies was for Fire Lieutenant, he noted that plaintiff was next on the list for the position. The memo concluded with a request that the indicated promotions be made and presented to the City Council as soon as possible. Second and third on the list were Eugene Ottaviani and Patrick Shaw, respectively. All three candidates possessed identical examination and seniority scores.

By memorandum dated March 25, 1993 from Harrison, plaintiff was informed that "[i]n anticipation of promotions", he

was to be transferred to a different shift as Acting Lieutenant. Despite the aforementioned recommendation, on June 14, 1993, LaMar selected Ottaviani for the position, a decision adopted by the Democratic majority of the City Council in a 4-3 vote. Quoting LaMar, Mayor James E. Hare and various Council Members, the local newspapers reported that the appointment was political retribution for plaintiff's former service as the Republican City Chairperson from 1979 to 1982.

Approximately three years later, the instant action was commenced alleging violations of Labor Law § 201-d and Civil Service Law § 61. Following discovery, defendant moved for summary judgment contending, *inter alia*, that LaMar appointed Ottaviani over plaintiff pursuant to his appointing authority, exercised in accordance with the law. Defendant proffered the civil service promotion list demonstrating that plaintiff and the next two candidates had identical test scores and seniority ratings resulting in a three-way tie. Defendant further included LaMar's detailed affidavit in which he admits that although he did receive "unsolicited input" on specific promotions from individual members of the City Council, he had no recollection of political pressure from the Mayor, City Council or any individual members with respect to his decision to promote Ottaviani over plaintiff. Finally, the record included the governing statute from which the appointing authority emanated.

In opposition, plaintiff submitted, *inter alia*, his own affidavit which referred to several conversations that he had with Council Members in which they indicated that he would not get the promotion because of his prior political activities. Plaintiff further proffered two affidavits of Richard T. Micelotta, a former Council Member, one detailing his efforts to convince Hare to promote plaintiff and a second describing an executive session of the City Council in which Hare admitted that plaintiff was not being promoted because of his political affiliation. He further offered the affidavits of two other Council Members who stated that the decision was politically motivated and that the decision was made by Hare rather than LaMar. Supreme Court, without explanation, granted defendant's motion, prompting this appeal. We reverse.

With respect to plaintiff's submission of additional materials on appeal, we agree with defendant that we will not consider matters outside the record (*see, Ughetta v Barile*, 210 AD2d 562, *lv denied* 85 NY2d 805). Reviewing defendant's proffer to Supreme Court, we note that "it was incumbent upon [defendant] to come forward with admissible evidence showing that plaintiff['s] political affiliations and activities did not play a

substantial part in its decision" (*McManus v Grippen*, 244 AD2d 632, 633). "[A] person successfully passing a competitive Civil Service examination *does not* acquire any 'legally protectable interest' in an appointment to the position for which the examination was given * * * nor 'thereby gain a vested right to appointment to the position'" (*Matter of Andriola v Ortiz*, 82 NY2d 320, 324, *cert denied* 511 US 1031 [emphasis added] [citations omitted], quoting *Hurley v Board of Educ.*, 270 NY 275, 279). We find that here, in the context of either the Civil Service Law or the Labor Law, defendant has made a prima facie showing of the propriety of the promotion, but such showing offered no explanation as to why LaMar chose Ottaviani over the other candidates, even though they were all equally qualified.

Plaintiff, faced with the burden to "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact" (*Zuckerman v City of New York*, 49 NY2d 557, 562) or demonstrate an acceptable excuse for the failure to do so (*id.*), could meet this burden by propounding evidence indicating that the employment decision was based upon his prior political activities (*see, Matter of Richardson v City of Saratoga Springs*, 246 AD2d 900, 902). In that context, plaintiff submitted, *inter alia*, the affidavit of Micelotta who averred that LaMar told him that he takes his "orders" from Hare and that Hare "runs the show." Micelotta recounts that, in a later telephone conversation with Hare, he was told that Hare was going to pass over plaintiff due to plaintiff's prior party affiliation and Hare's personal dislike of him, confirmed again in Micelotta's later meeting with Hare who informed him, at that time, that he would publicly deny making that statement. Lastly, Micelotta recounts an executive session of the City Council in June 1993 where Hare, various Council Members and LaMar were present. He recalled mentioning to Councilperson Herrick that plaintiff was being passed over because of "political reasons." Upon questioning by Herrick, Micelotta pointed to Hare who admitted to making the statement. The affidavit of Councilperson Bombarger, who also witnessed the aforementioned events in executive session, further detailed that during his tenure "the [C]ity [M]anager was always influenced by the majority as to civil service and other appointments".

Plaintiff's affidavit attempts to supply the reasoning behind the appointment of Ottaviani. As evidenced by an annexed financial disclosure statement of the New York State Board of Elections dated November 25, 1987, Ottaviani's wife served as

Hare's treasurer for his election committee. Lastly, plaintiff submitted two newspaper articles which quote Hare and other City officials as strongly suggesting that plaintiff was bypassed solely as a result of his political activities and affiliation.

In assessing this offer, we reject defendant's challenge to these submissions as inadmissible hearsay; under certain circumstances, hearsay and other inadmissible evidence has been found sufficient to defeat a motion for summary judgment (*see, Zuckerman v City of New York, supra*, at 562; *Chrysler First Fin. Servs. Corp. v De Premis*, 225 AD2d 1003, 1004). " '[W]here * * * [the] affidavits * * * identify the witnesses, the substance of their testimony, how it is known what that testimony would be and how the witnesses acquired their knowledge, the hearsay set forth in such affidavits may be sufficient to defeat a motion for summary judgment provided an acceptable excuse for the failure to tender evidence in admissible form is supplied' " (*Siegel v Wank*, 183 AD2d 158, 161, quoting *Landisi v Beacon Community Dev. Agency*, 180 AD2d 1000, 1002). Finding that the affidavits of plaintiff, Micelotta and Bombarger wholly satisfy this criteria and that plaintiff's failure to provide an affidavit from either Hare and/or LaMar can be attributed to the fact that they would be likely unwilling to voluntarily confirm admissions of complicity (*see, Robbins MBW Corp. v Ashkenazy*, 228 AD2d 357; *Siegel v Wank, supra*, at 161), Supreme Court's apparent exclusion of this evidence as well as the newspaper articles—although clearly unauthenticated and hearsay—was in error (*see, Peckman v Mutual Life Ins. Co.*, 125 AD2d 244, 247).

As we are bound to construe the facts in a light most favorable to plaintiff, we must conclude that the totality of this evidence raises a question of fact concerning LaMar's political motivation in making the appointment. Hence, summary judgment was improperly granted on both the Labor Law § 201-d claim (*see, Matter of Richardson v City of Saratoga Springs*, 246 AD2d 900, 902, *supra*) and the Civil Service Law § 61 (1) claim (*cf., Matter of Andriola v Ortiz*, 82 NY2d 320, *supra*; *McManus v Grippen*, 244 AD2d 632, 634, *supra*).

Crew III, J. P., Spain, Graffeo and Mugglin, JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.